IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

NADA DELANE STANLEY,

      Plaintiff,

v.                        CASE NO. 2:09-cv-00939

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Nada Delane Stanley (hereinafter referred to as "Claimant"), filed an application for SSI on March 16, 2005, alleging disability as of February 21, 2001, due to tendonitis, a herniated disc, degenerative disc disease, scoliosis, back pain, carpal tunnel syndrome, scapular dysfunction, right arm injury, right shoulder injury, shoulder pain, rib fractures, hypertension, and depression.[1] (Tr. at 427, 450-52, 455-57, 462-64.) The claim

---

[1] As noted in the March 26, 2007 ALJ hearing decision, Claimant has filed two prior SSI and DIB applications alleging disability beginning on February 21, 2001. (Tr. at 427.) For the purpose of adjudicating Claimant's current SSI claim, the ALJ noted that the time period between February 21, 2001 and January 28, 2005, had already

was denied initially and upon reconsideration.  (Tr. at 427, 450-52, 455-57.)  On December 19, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 458.)  The hearing was held on January 25, 2007 before the Honorable Charlie Paul Andrus.  (Tr. at 438-41, 753-75.)  By decision dated March 26, 2007, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 427-37.)  The ALJ's decision became the final decision of the Commissioner on June 19, 2009, when the Appeals Council denied Claimant's request for review.  (Tr. at 419-23.)  On August 17, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential

---

been adjudicated in a prior 2005 hearing decision.  The ALJ further noted that the 2005 hearing decision was pending review by the United States District Court and that there was no basis or jurisdiction with which this time period could be revisited. (Id.)  In Stanley v. Astrue, No. 2:06-cv-158 (S.D.W.Va. March 28, 2007), the Commissioner's decision denying benefits was affirmed.

evaluation" for the adjudication of disability claims.  20 C.F.R. § 416.920 (2008).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2008).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has

3

the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 429.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic degenerative disc disease of the lumbar spine, chronic lumbar strain, arthrosis of the right shoulder joint, and arthritic pain of the hands. (Tr. at 429-31.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 431-32.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 432-35.) As a result, Claimant cannot return to her past relevant work. (Tr. at 435-36.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as office clerk, cashier, product inspector, and surveillance monitor. which exist in significant numbers in the national economy. (Tr. at 436-37.) On this basis, benefits were denied. (Tr. at 437.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial

4

evidence.   In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.   <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).   Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was 52 years old at the time of the administrative hearing.  (Tr. at 757.)  She completed the 11th grade and attained a General Equivalency Diploma (GED).  (Tr. at 597, 758.)  In the past, she worked as a vacuum cleaner assembler and a sales associate.  (Tr. at 759.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below.

Physical Evidence

Records dated April 4, 2000 to October 13, 2003 indicate Claimant received tests and evaluations related to an April 2000 Kentucky Workers' Compensation claim for a right shoulder injury. (Tr. at 525-70.)   Claimant was diagnosed with "right shoulder bursitis and musculoskeletal strain in her right chest wall area." (Tr. at 569.)  An April 4, 2000 progress note from Ephraim McDowell Health Family Medical Center ["EMHFMC"] states that Claimant

> puts rubber furniture guards around vacuum cleaners. Last Wednesday, she unloaded and placed approximately 1,500 of these rubber guards around some vacuum cleaners. She had a box that was bad and she states she had to do some extra pulling with her right arm.  On Thursday, she started to feel a burning sensation and discomfort in the right shoulder and right axilla area.   This pain has progressively gotten worse.    She saw her family physician, Dr. Bibb, and was prescribed Darvocet N100 q 4-6 hours prn pain, and Naprosyn 500 mg. One bid.  She also went to her chiropractor on Saturday to have some adjustments done... Work excuse given until 4/11/00.

(Tr. at 570.)

An April 20, 2000 progress note from EMHFMC states Claimant "does feel like she is able to go back to work.  Still has some pin point tenderness in the right scapular area and a little bit in the upper triceps area but has full range of motion.   No edema, erythema.  Good radial pulses bilaterally and good strength... Let her return to work.  She is to try to alternate using her arms for

6

pulling." (Tr. at 567.)

On November 20, 2003, Claimant was evaluated by Robert W. Lowe, M.D. for a medical evaluation. (Tr. at 510-190.) Dr. Lowe reported that Claimant's current complaint was right shoulder and arm pain. (Tr. at 511.) He noted that Claimant had a normal gait, lateral bending of the cervical spine, rotation of the head, reflexes at the biceps and triceps, and good grip strength. (Tr. at 515.) He further noted:

> Examining the right shoulder, she is able to raise her hands overhead, though she complains of pain at the endpoint on abduction. Range of motion of the shoulder includes normal adduction, but some pain at the extremes of adduction. Extension of the shoulder is good. Internal and external rotation is normal... There is no classical numbness of the fingers... I did examine her back to an extent. She walks with an erect posture... Her extension is normal. Lateral bending is 25 degrees in either direction. Reflexes are intact at the knees and ankles. Sitting straight leg raising is 90 degrees bilaterally without complaints...I would not recommend this person for return to the factory work that she previously had. I would suggest she avoid overhead work and right arm work, lifting not greater than 10-15 pounds.

(Tr. at 515-17.)

On January 22, 2004, Robert W. McCleary, D.O. stated that he had examined Claimant due to complaints of pain in the right thoracic and scapular regions. He noted:

> She has full range of motion of the shoulder. She has 5/5 muscular strength. She has a massive amount of trigger point areas over the anterior chest wall and the scapulomuscular region...MRI and x-rays were basically read as normal except for some AC joint degeneration on the MRI of the shoulder. MRI of the cervical spine shows no evidence of herniated discs but some mild degenerative

7

disc disease.  She has no numbness or tingling.  She has
5/5 muscular reflex.  She has no clonus or Babinski.
DTRs are normal.  X-rays of the should are normal as well
as the cervical spine.  Thoracic region had an EMG done
in 2000 that showed mild carpal tunnel syndrome, but she
has negative Tinel's and Phalen's sign.
**Assessment**: 1. Myofascial syndrome.
              2. Sternocostal mild separation.
              3. Right scapular thoracic muscular dysfunction.
**Plan**: I am recommending pain management, physical
therapy, and steroidal medications with non-steroidals...
I do not feel that she can go back to the type of work
that she was doing... She should be a sedentary worker.

(Tr. at 524.)

On March 20, 2004 and January 3, 2005, Claimant received chiropractic treatment from Phillip E. Shaw, D.C.  (Tr. at 520-21.)

Handwritten notes from Teays Valley Medicine and Rehabilitation dated from August 13, 2004 to February 21, 2005 indicate Claimant had fourteen office visits during that time period.  (Tr. at 571-84.)  Although the notes are largely illegible, the treatment appears primarily related to "right shoulder and forearm pain... [and] right upper chest."  (Tr. at 582.)

On September 21, 2004, Larry A. Baker, D.O. stated that Claimant had visited his office twice.  He requested that Claimant's insurer approve three weeks of aquatic and regular therapy to increase Claimant's range of motion.  (Tr. at 523.)  On February 15, 2005, his staff requested a Nerve Conduction Velocity study because Claimant was "complaining of forearm and wrist pain." (Tr. at 522.)

8

On March 9, 2005, Richard E. McWhorter, M.D. reviewed an x-ray of Claimant's left ribs.  He concluded: "There is a simple fracture of the posterior 9th left rib laterally.  No pneumothorax is seen. No other rib fracture is apparent."  (Tr. at 669.)

On March 25, 2005, Claimant presented to St. Mary's Medical Center Emergency Department due to pain related to a March 8, 2005 fall.  (Tr. at 594.)  Claimant was diagnosed with fractures of the left eighth, ninth and tenth ribs.  (Tr. at 595, 693-97.)

On May 2, 2005, Stephen Nutter, M.D. examined and evaluated Claimant for the West Virginia Disability Determination Division. (Tr. at 596-602.)  Dr. Nutter concluded:

> The claimant is a 50-year-old white female complaining of problems with her back and neck.  She had pain and tenderness to the cervical, dorsal, and lumbar spine...with a decreased range of motion.  The straight leg test was negative.  Grip strength was a little abnormal on the right compared to the left... Fine manipulation skills and sensory modalities were intact. Muscle strength testing showed some giveaway weakness and difficulties due to pain.  There is no definite evidence of nerve root compression noted.

> The claimant complains of joint pain.  She had pain and tenderness to the right shoulder, elbow, and wrist, and hand with a little bit of swelling in the hand and Heberden's nodes noted in hands.  She had pain and tenderness in both hips.  Findings that would be consistent with osteoarthritis.  She had crepitus in the shoulders.  There is no evidence of rheumatoid arthritis. On physical exam, there are no rheumatoid nodules, capsular thickening, periarticular swelling, or tophi. There is no ulnar deviation.

(Tr. at 600-01.)

On May 5, 2005, Eli Rubenstein, M.D., stated in an x-ray

report: "Thoracic spine - In the upper dorsal area there is a 5 degree right convex scoliosis of the dorsal spine.  The lumbar spine has no scoliotic deformity."  (Tr. at 602.)

On May 19, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work with the ability to perform all postural limitations occasionally except climbing ladder/rope/scaffolds.  (Tr. at 604-5.) Claimant was found to have no manipulation, visual, or communication limitations. (Tr. at 6060-07.)  She was found to have no environmental limitations save to avoid extreme cold, vibrations, and hazards.  (Tr. at 607.)  The evaluator, Cynthia Osborne, M.D. noted: "Based on the medical and non-medical information...it appears the claimant is partially credible.  Complaints are out of proportion to findings.  Although expect some pain and limitations she is not totally disabled and should be capable of light level of work."  (Tr. at 608.)

On August 12, 2005, Charles M. Siegler, M.D. reviewed Claimant's bilateral mammogram and concluded: "There are no radiographic signs of malignancy.  There is no significant change from the prior mammogram."  (Tr. at 650.)

On October 17, 2005, J. Alan Cochrane, M.D. reviewed Claimant's pelvis x-ray and reported: "The bony pelvis is intact. The hip and SI joints are symmetrical...No bony abnormality is seen.  Severe chronic degenerative disc space narrowing at L5-S1...

10

Conclusion: No acute findings." (Tr. at 642.)

On November 15, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work with the ability to perform all postural limitations occasionally except climbing ladder/rope/ scaffolds. (Tr. at 612-13.) Claimant was found to have no visual or communication limitations, and no manipulative limitations except a limitation in reaching all directions. (Tr. at 614-15.) Her only environmental limitations were to avoid extreme cold, vibrations, and hazards. (Tr. at 615.) The evaluator, Rosalind L. Go-Lee, M.D. concluded:

> She alleges back pains, HPN [hypertension], should pains, CTS [carpal tunnel syndrome], and rib fractures. Her ADL [activities of daily living] showed some restrictions some of which are not fully supported by objective findings and diagnostic testings. Her pains and symptoms are partially credible and they will restrict her to do[ing] only light work.

(Tr. at 616.)

On January 5, 2006, Paul D. Akers, M.D. reviewed Claimant's thoracic spine x-ray and reported: "There is subtle "S" shaped curvature on the thoracic spine. The vertebral body height and alignment are normal. The disc spaces are normal. Impression: Scoliosis. Otherwise, negative study." (Tr. at 637.)

Treatment notes from Lincoln Primary Care Center dated January 17, 2006 to February 6, 2007 indicate Claimant received treatment and medication management for various conditions, primarily for

back pain, hand pain, hypertension, chest pain, depression, and panic/anxiety. (Tr. at 702-32.) Although the handwritten notes are largely illegible, the typed clinical records signed by Michael Grome, PA-C, indicate treatment, medication, and testing related to the aforementioned ailments. (Tr. at 715, 717, 721, 724, 731.)

On July 28, 2006, Scott E. Miller, M.D., evaluated Claimant for symptoms of pressure in her chest.  He reported:

> She had a nuclear stress test that showed ischemia...her
> EKG does not show an infarction...
> Assessment: 1.  Smoking.  I have asked her to stop this
> immediately.  2.  Positive nuclear stress test.
>
> We are going to proceed with catheterization... I added
> an aspirin a day to her regimen.  I will see her back
> after the catheterization to talk about further treatment
> and follow-up.

(Tr. at 679.)

On August 26, 2006, Marsha Anderson, M.D. interpreted Claimant's MRI lumbar spine without contrast: "Vertebral bodies are normal in height, signal intensity and alignment...Some soft tissue signal abnormality is seen of the region left L2-3 neural foramen and a small area of protrusion or extrusion is suspected causing the fat to be obliterated.  Mild bulging disc from L2-S1." (Tr. at 738.)

On August 26, 2006, Marsha Anderson, M.D. interpreted Claimant's MRI thoracic spine without contrast: "Paravertebral bodies are normal in height, signal intensity and alignment... Degenerative changes with minimal protrusion verses extrusion at T-

12

6 through T-8." (Tr. at 739.)

On October 9, 2006, Dr. Miller reported that Claimant's "cardiac catheterization revealed evidence of a 30-40% LAD blockage...I am going to proceed with a stress echocardiogram... I have a low suspicion any of this is cardiac related... I have warned her that she has to stop smoking immediately." (Tr. at 678.)

On October 17, 2006, Dr. Miller reviewed Claimant's stress echocardiogram report and concluded: "Negative stress echo for ischemia or infarction by echo criteria." (Tr. at 676.)

On November 9, 2006, Richard E. McWhorter, M.D. interpreted Claimant's bilateral mammogram as showing no radiographic signs of malignance and no significant change from the prior mammmogram. (Tr. at 737.)

On January 6, 2007, Claimant was treated at St. Mary's Hospital Emergency Department for back, hip, and leg pain. Claimant was discharged to home with prescriptions and instructions to follow-up with primary care provider. (Tr. at 683-92.)

On January 16, 2007, Francis M. Saldanha, M.D., Charleston Pain Management Consultants, examined and evaluated Claimant. (Tr. at 698-71.) He concluded that Claimant had "arthrosis right should joint, chronic lumbar degenerative disc disease and chronic lumbar strain." (Tr. at 698.) He opined that injectable modalities would not help her conditions but that "medication changes may be

13

appropriate." (<u>Id</u>.)

<u>Psychiatric Evidence</u>

Records from Lincoln Primary Care Center indicate Claimant received services from February 2, 2005 to January 17, 2006. (Tr. at 633-71.) While the handwritten notes are largely illegible, the typed clinical records signed by Michael Grome, PA-C [physician's assistant-certified] indicate claimant was treated on June 28, 2005 for "hypertension, anxiety/depression with insomnia...some restless leg symptoms. Back pain is improved somewhat." (Tr. at 651.) Notes dated December 20, 2005 indicate "recheck hypertension, persisting back pain and anxiety with depression...difficulty with insomnia...requesting counseling" (Tr. at 638.)

On December 3, 2005, a State agency medical source completed a Psychiatric Review Technique form ["PRTF"]. (Tr. at 619-32.) The evaluator, Robert Solomon, M.A., Ed.D., licensed psychologist, found Claimant's affective disorder of depression was not a severe impairment. (Tr. at 619, 622.) Dr. Soloman found Claimant had no restriction of activities of daily living, difficulties in maintaining social functioning, or episodes of decompensation. (Tr. at 629.) He concluded Claimant had mild difficulties in maintaining concentration, persistence, or pace. (<u>Id</u>.) Dr. Solomon found that the evidence did not establish the presence of the "C" criteria. He further noted that Claimant had recently been treated at Lincoln Primary Care Center for anxiety, depression, and

14

insomnia but she had no restrictions in her activities of daily living:

> able to take care of her personal needs, will go outside daily, shop in the store for 15 minutes once a month, she plays dominos with her mother and sister once a month, visit[s] her mother daily.  No MH/psych. HxTx [mental health or psychiatric history/treatment]...No IP/OP MH/psych [inpatient/outpatient mental health or psychiatric]; does have (just-started) PTP Dx of & meds for "– – depression." No MSE [mental status examination] restrictions noted in MER [medical evidence of record]; most c/o are related to/caused by "sleep prob's."  ADL [activities of daily living] c/o psych. decrements: None, psych. – specific, per se; c/o are all physical. Claimant is credible.

(Tr. at 631.)

On January 17, 2006, Mr. Grome of Lincoln Primary Care Center, indicated a recheck on back pain and anxiety/depression:

> She is presently under the care of Prestera and has recently increased Lexapro to 20 mg q.d. and Vistaril to 25 at h.s. and found an improvement in her affect. Sleeping better and less discomfort as long as she takes Ultram in conjunction with Tylenol for her pain which she is taking one half tablet with two Extra Strength Tylenol twice daily... Multiple trigger points with evidence of fibromyalgia.

(Tr. at 634, 731.)

<u>Additional Evidence Presented to the Appeals Council</u>

Records dated March 29, 2007 through August 20, 2007, from Alum Creek Medical Center, are handwritten and illegible.  (Tr. at 749-52.)  The records appear to indicate Claimant had five office visits during that time period for pain and related medication management, wherein she was referred to St. Mary's Pain Relief Center.  (Tr. at 750, 751.)

On April 5, 2007, Thomas J. Zekan, M.D., Mountaineer Imaging, reported to Scott Smith, D.O. of Alum Creek Medical Center regarding Claimant's scoliosis series:

> AP upright views of the thoracolumbar spine were obtained. Visualization is somewhat limited given the patient's size. There is a mild apex left thoracolumbar scoliosis measuring 10 degrees from the superior endplate of T8 to the superior endplate of L1. The lumbar component has a somewhat rotatory component. The inferior right lobe of the liver does extend quite low down to the level of the upper pelvis. This may represent a Ridell's lobe though hepatomegaly cannot be excluded. Clinical correlation is necessary. Otherwise unremarkable.

(Tr. at 746, 748.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in failing to properly consider the combined effect of her impairments; and (2) the ALJ erred in assessing Claimant's credibility and pain. (Pl.'s Br. at 11-15.)

The Commissioner argues that (1) the combined effect of Claimant's medically-determinable impairments were properly considered by the ALJ; and (2) the ALJ's credibility assessment is supported by substantial evidence. (Def.'s Br. at 9-13.)

Combined Effect

Claimant first argues that the ALJ erred in failing to properly consider the combined effect of her impairments. Specifically, Claimant states that she

16

suffers from neck and back pain, right shoulder pain and right arm impairment. She also suffers from depression and anxiety, which the ALJ did not adequately consider. (TR 429-437) The mental conditions were not considered in his RFC at all, not even mild limitations were listed... The medical records, including the findings of the state agency evaluator, support at least mild limitations in daily living, social functioning and concentration. While these limitations are not severe, the limitations exist and were not addressed by the ALJ... Further, Ms. Stanley was diagnosed with carpal tunnel syndrome. (TR 340) This condition would clearly limit her ability to use her hands and perform tasks requiring any grasp. This was not accurately considered by the ALJ. When combined with her chronic pain, Ms. Stanley should be found disabled due to her carpal tunnel, anxiety, and depression as well.

(Pl.'s Br. at 12-13.)

The Commissioner responds that the Claimant's argument is flawed because it relies upon evidence that pre-dates Claimant's 2005 SSI claim and the time period adjudicated by the ALJ. (Def.'s Br. at 9.) The Commissioner further asserts that Claimant's argument overlooks that her psychological symptoms have consistently responded to treatment with anti-depressant medication. (Id.)

The Social Security regulations provide,

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2008). Where there is a combination of impairments, the issue "is not only the existence of the problems,

but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

In his decision, the ALJ determined that Claimant suffered from the severe impairments of chronic degenerative disc disease of the lumbar spine, chronic lumbar strain, arthrosis of the right shoulder joint, and arthritic pain of the hands. (Tr. at 429-31.) Contrary to the Claimant's assertions the ALJ fully considered the Claimant's hand pain, anxiety, and depression, as well as other conditions for which she has been treated, and their combined effect. He stated:

> As discussed in the prior decision, although the actual diagnoses have differed somewhat the current medical evidence, nevertheless, supports that the claimant continues to have chronic pain of the back, right shoulder and forearm, and hands (Exhibits C-3F through C-21F). Further, in addition to subjective complaints of pain, clinical examinations have revealed tenderness of the right shoulder joint and forearm, and tenderness with slightly diminished motion and grip strength of the hands (Exhibits C-13F and C-20F)... While medicative and various other conservative treatment modalities have been somewhat effective, the record indicates that these conditions continue to present significant limitations in the claimant's functioning (Id.) Thus, I find these impairments to be "severe" within the meaning of the regulations.

> Although the claimant has not specifically alleged
> impairments as a result of cardiac disease, hypertension,
> or gastroesophageal/gastrointestinal reflux disease
> (GERD), the evidence shows that she has been diagnosed
> with and has received treatment for these conditions
> (Exhibits C-2F through C-13F, and C-18F through C-21F).
> Recent treatment notes from the claimant's treating
> practitioner's reveal an increase in her blood pressure,
> requiring adjustments to her medication (Exhibit C-21F).
> Cardiac work up...has not revealed any abnormalities and
> there has been no finding of current cardiac disease
> (Id.) Additionally, there is no indication of end organ
> damage, cardiac dysfunction, recurrent ulceration, or
> massive hemorrhaging (Exhibits C-4F, C-8F, C-9F, C-13F,
> C-18F, and C-19F). Absent such evidence, I find these
> impairments to be "nonsevere."
>
> Similarly, although the evidence shows that the claimant
> has also been assessed with anxiety and depression, as
> indicated in treatment records of her primary care
> physicians, the claimant testified that her psychotropic
> medication (Cymbalta, an anti-depressant) is effective in
> controlling her symptoms (Exhibits C-4F, C-9F, C-13F, and
> C-18F). Further, exclusive of medicative treatment I
> find no indication in the record to suggest that the
> claimant's emotional symptoms have risen to the level as
> to prompt her to seek formal mental health treatment
> (Id.)

(Tr. at 430-31.)

The ALJ went on to fully analyze Claimant's anxiety and
depression due to her exhibition of some of the features consistent
with the "A" criteria of listing 12.04. (Tr. at 430.) After a
review of the relevant "B" criteria (activities of daily living,
deficiencies of concentration, persistence or pace, and episodes of
deterioration or decompensation), the ALJ concluded that Claimant's
mental impairments did not result in more than "mild" limitation.
(Tr. at 430-31.)

Further, in considering and analyzing the combined effects of

19

Claimant's impairments, the ALJ concluded:

> As discussed in the prior decision, diagnostic testing
> (radiological and MRI scans) have revealed the claimant
> to have degenerative disc disease and bulging discs of
> the cervical and lumbar spine areas, right shoulder
> joint, with notable tenderness and motion loss upon
> physical examination; however, there have been no
> findings of neurological or motor deficits (Exhibits C-2F
> through C-13F, and C-18F through C-21F). Further, the
> claimant has retained the ability to ambulate and perform
> fine and gross movements effectively (Id.).
>
> In addition, after reviewing all of the evidence and
> considering the interactive and cumulative effects of all
> of the claimant's medically determinable impairments,
> including those that are "non-severe," I find that the
> claimant does not have a combination of impairments that
> meet or medically equal any listed impairment found in
> Appendix 1 to Subpart P of Regulations No. 4.

(Tr. at 431-32.)

The court finds that the ALJ adequately and properly considered
the combined effect of Claimant's impairments. Claimant's arguments
that the ALJ overlooked her psychological symptoms and hand pain are
unfounded. The ALJ found Claimant's hand pain to be a severe
impairment. Additionally, Claimant's testimony and the medical
evidence of record show that medication is effective in controlling
her psychiatric symptoms. (Tr. at 634, 769.) It is noted that a
January 17, 2006 Lincoln Primary Care Center record indicated
Claimant is "presently under the care of Prestera." (Tr. at 634,
731.) However, the medical evidence of record contains no records
from Prestera, a mental health and addiction services center. Nor
has Claimant asserted that she receives formal mental health
treatment.

Credibility Determination

Claimant next argues that the ALJ erred in assessing her credibility because she sought treatment for her pain and the "medical records support conditions that would certainly cause the pain as alleged." (Pl.'s Br. at 14.)

The Commissioner responds that credibility determinations are reserved to the ALJ and that Claimant's "arguments do not demonstrate legal error in the ALJ's analysis." (Def.'s Br. at 11-12.)  The Commissioner also points out that Claimant has been treated conservatively with physical therapy and medications. (Def.'s Br. at 13.)

Social Security Ruling 96-7p clarifies when the evaluation of symptoms, including pain, under 20 C.F.R. §§ 404.1529, requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements.  The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record.  This includes, but is not limited to:

- The medical signs and laboratory findings;

- Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

- Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

In his decision, the ALJ determined that Claimant had medically determinable impairments that could cause her alleged symptoms. (Tr. at 434.) The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain and other symptoms, precipitating and aggravating factors, Claimant's medication and side effects, and treatment other than medication.  (Tr. at 434-35.)  The ALJ explained his reasons for finding Claimant not entirely credible, including the objective findings, the conservative nature of Claimant's treatment, the lack of evidence of side effects which would impact Claimant's ability to perform her past relevant work, and her broad range of self-reported daily activities stated in her disability questionnaires. (Id.)  The ALJ stated:

22

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but I find the credibility of the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms to be poor. The claimant's statements regarding her pain and her description of daily living activities at the hearing were extremely vague and exaggerated. As stated above, although the claimant admitted that her current medication regimen is now relieving her pain, she also stated that she cannot walk, stand, or sit for "too long." Further, at the hearing the claimant testified that she does very little in the way of household chores and activities, stating that she "wipes off what she can" and does "very little" cooking. However, in her disability questionnaires, she reports that she shops, cooks, visits with her mother daily, and that she plays dominoes with her mother and sister although she claims to be able to "only turn the dominos over twice without pain" (Exhibits C-2E and C-7E). I do not find such activities to be consistent with those of a totally incapacitated individual, as the claimant has alleged. Additionally, the claimant testified that she lies down for up to one hour every day, but treatment records do not show subjective complaints or functional limitations of this magnitude. Based on all of the above, I find the credibility of the claimant's subjective complaints to be less than fully credible and, thus, treat her allegations accordingly herein.

(Id.)

With respect to Claimant's argument that the ALJ wrongfully discredited Claimant's subjective complaints of pain, the undersigned finds that the ALJ properly weighed Claimant's subjective complaints of pain in keeping with the applicable regulations, case law, and social security ruling ("SSR") and that his findings are supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2008); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

23

Finally, pursuant to <u>Wilkins v. Secretary</u>, 953 F.2d 93, 96 (4th Cir. 1991), upon review of the record as a whole, including the new evidence submitted to the Appeals Council, the court concludes that even considering the additional evidence, the ALJ's decision is supported by substantial evidence.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: July 29, 2010

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge

24